IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CR. NO. 1:21-CR-273 (TFH) |
| STEPHEN BAKER | ) | |
| | ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

Stephen Baker, by his attorney, David W. Bos, Assistant Federal Public Defender, hereby submits the following memorandum in aid of sentencing in this matter. Pursuant to the sentencing factors set forth in 18 U.S.C. §3553(a) as delineated in *Rita v. United States*, 127 S. Ct. 2456 (2007), *Kimbrough v. United States*, 128 S. Ct. 558 (2007), *Gall v. United States*, 128 S. Ct. 586 (2007) and *Nelson v. United States*, 555 U.S. 338 (2009), Mr. Baker, respectfully requests the Court to impose a sentence of twenty-four months' probation, with the condition that Mr. Baker complete 40 hours of community service. As the Court will recall, Mr. Baker has also agreed to pay $500 in restitution in this case. Mr. Baker submits that the requested sentence is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553, for this Class B Misdemeanor offense. In support of this request, counsel states:

On February 14, 2022, Mr. Baker entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC

1

§5104(e)(2)(G), for his participation in the events on January 6, 2021. On that day, he attended the "Save America" rally where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[1]" After the rally, Mr. Baker, along with thousands of other individuals attending the rally, walked over to the Capitol building. Although not authorized to do so, and knowing that he was not permitted to enter the Capitol building, Mr. Baker went inside with a group other rally attendees. There is no evidence Mr. Baker intended or was prepared to engage in any violent activity that day: He possessed no weapons. He was not wearing any protective clothing. He was not part of any group. Mr. Baker entered the building through an open door on the east side of the Capitol. While inside, Mr. Baker was not violent, did not destroy property, did not confront any law enforcement officers, did not encourage or incite others to engage in violence, did not engage in any chanting, and did not enter any sensitive areas. Rather, Mr. Baker remained on the edge of the crowd documenting the events of the day. When told to exit the building by law enforcement officers, Mr. Baker did so.

---

[1] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

**ARGUMENT**

I. **Legal Standard**

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

II. **Imposing a Sentence of 24 Months' Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

a. **Mr. Baker's Personal History and Characteristics**

Mr. Baker is 34 years old. Born and raised in the Detroit, Michigan, area, Mr. Baker moved to Washington, D.C. when he was 22 years old. Mr. Baker comes from a close-knit family that has been fully supportive of him during the pendency of this case. His mother describes Mr. Baker as "an amazing young man" who "wouldn't squash a bug."

Mr. Baker graduated from high school in 2006. After graduating, Mr. Baker attended Western Michigan University, and then Lansing Community College.

Mr. Baker is a working musician who not only performs regularly but also teaches. At the time of his arrest, Mr. Baker had been employed as a music instructor at the same music shop for nearly a decade. Mr. Baker loved his job as a music instructor, but as a result of the notoriety his arrest he was let go by the music shop. He continues to provide private music instruction to nearly two dozen students. He also performs professionally on a weekly basis.

### b.  Nature and Circumstances of the Offense

After hearing several speeches encouraging the crowd to walk down to the Capitol building, Mr. Baker followed the crowd towards the Capitol grounds.  He traveled to Washington D.C. alone. There is no evidence Mr. Baker intended or was prepared to engage in any violent activity that day.

Mr. Baker entered the Capitol through an open door. He did not meet any resistance from law endforcement as he entered the building. He walked around the Capitol building with his phone, videotaping the day's events. Mr. Baker did not engage in any violence or encourage anyone else to engage in any violence. He did not destroy any property or encourage anyone else to destroy property. He did not confront any police officers or encourage anyone else to confront any police officers. And, when told to do so, Mr. Baker left the Capitol voluntarily without incident.

### c.  The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate

### Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Based on Mr. Baker's personal history and characteristics, supervision is appropriate and the interests in rehabilitation outweigh any interest in incarceration. It is also extremely unlikely that he will recidivate given his lack of criminal history and his perfect record on pre-trial supervision for the past year. Any potential for recidivism can be addressed by conditions of probation, a more effective method of deterrence than a period of incarceration, especially for a young man such as Mr. Baker.

As Congress has noted, "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and non-serious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note). Mr. Baker is plainly not a "violent and serious offender" who "pose[s] the most dangerous threat to society."

Mr. Baker submits that a conviction, followed by an extended period of supervision and restrictions on personal freedoms that would subject him to imprisonment if violated provides just punishment in this case. As the Supreme Court noted in *Gall*, offenders on probation are subject to "conditions that substantially restrict their liberty." *Gall* notes that:

> Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from their probation officers or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual, 'special conditions' imposed by the court . . . . Probation, if violated, may result in any . . . sentence that initially could have been imposed.

These conditions served multiple purposes, among them promoting respect for the law and serving a punitive function.

Mr. Baker's conduct on January 6, 2021 is similar in some respects to *U.S. v. Nicholas Reimler*, 1:21-CR-239 (RDM), where Judge Moss sentenced the defendant to 36 months' probation. Like Reimler, Mr. Baker did not enter any sensitive areas, engage in destruction or confront police officers, and left on his own accord. The biggest difference, however, is that Reimler recorded himself laughing about what was going on.

Although there is no case identical to Mr. Baker's case, *United States v. Jessica Bustle,* 1-21-CR-238 (TFH), is more akin to the instant offense where this Court imposed 24 months' probation with 2 months' home detention. The defendant in that case was extremely vocal on social media about being proud of her participation on January 6, 2021. She also observed broken windows, individuals being tear gassed, and later wrote on social media that a revolution was needed. However, both Jessica and Mr. Baker did not have negative confrontations with officers, enter sensitive areas, and left on their own accord. Both also accepted responsibility for their conduct. After the Court balanced the 3553(a) factors in Ms.

Bustle's case, it ultimately decided that a term of incarceration would not be productive. *See* Dkt No. 41, Transcript of proceedings. Similarly, here, a sentence of incarceration would be counterproductive and unwarranted.

## **CONCLUSION**

For the reasons stated above, Mr. Baker respectfully requests that the Court impose 24 months' probation with the condition that he complete 40 hours of community service. Mr. Baker also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

<div style="margin-left: 50%;">

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
David W. Bos
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500

</div>